# THE HOLZMAN LAW FIRM, LLC

8955-A Edmonston Road
Greenbelt, MD 20770
Direct: (301) 876-4393
Fax: (301) 859-4886
lholzman@theholzmanlawfirm.com

March 12, 2013

Judge Roger W. Titus
Judge Paul W. Grim
United States District Court
For the District of Maryland
6500 Cherrywood Lane
Greenbelt, MD 20770

RE:   Malibu Media, LLC v. John Doe Cases in the District of Maryland

Dear Judges Titus and Grimm

Thank you for the invitation to respond to the issue of subpoenas issued by the Plaintiffs referenced above and others similar. For most of the past 15 years, I have been with the firm of Joseph, Greenwald & Laake, P.A. Relatively recently I left to form my own firm. However, my relations and bonds with the lawyers at my former firm are very strong and I continue to practice as co-counsel with them on cases and interaction is regular. During the last few years of my time at Joseph Greenwald & Laake, P.A. I was aware that the firm encountered multiple clients (including my own) who had been served with subpoenas such as those that form the basis for the court's current inquiry. As such, I am pleased to see the court is investigating the practices involved in this matter. On one hand, intentional violation of copyrighted material is serious business and it is wrong. On the other hand, I believe that the use of subpoenas in this matter is not honest. I believe that the use of subpoenas in these cases is, among other things, an actionable abuse of process.

1. The Clients' Experience

Each of the clients that I am personally aware of or was made aware of by persons at my former firm was a Maryland resident and worked in a position where he/she had a security clearance. In each case, the client received by mail a package from his/her Internet Service Provider (ISP), such as Comcast, Verizon, etc. The package contained a cover letter from the ISP indicating that it had received a subpoena requesting the disclosure of information to identify the person assigned to a particular IP address. The cover letter indicated that the ISP's intention was to comply with the Subpoena and disclose its customer's identity information unless the customer obtained relief from a court before it was obligated to produce pursuant to the terms of the subpoena.

THE HOLZMAN LAW FIRM, LLC

Included with the cover letter was a copy of the subpoena itself as well as pleadings describing in detail the allegations of the complaint and the title(s) of the material that was allegedly copied via "bit-torrent".

Each of the clients I am aware of denied copying the material. Each of the clients that I am aware of was upset and very concerned that if they were associated in any way with a suggestion of criminal or deviant activities that their security clearance and livelihood would be in jeopardy. Each of them retained counsel and in all cases, counsel contacted the Plaintiff's attorney to investigate the nature of the allegations and ascertain a strategy for resolving the subpoena. In each case, the clients I am aware of wound up settling their case by paying several thousand dollars to the plaintiff.

2. The Settlement Experience

In each of the cases, the lawyer who represented the alleged victim called the plaintiff's attorney and was referred immediately to the "settlement department" telephone number. The "settlement department" was located in Florida. Once on the phone with the "woman" in Florida who answered the phone, the lawyer was immediately advised as to what the settlement amount was for the case. I recall the actual words that were used with me during that first call.

The call went more or less as follows: I identified myself and stated the purpose of my call. The woman asked title of the work and the state and then launched into a speech paragraph at great speed, indicating to me that it had been recited many times. She said "We are settling these cases for $_____. We can accept payment directly from your trust account so that your client's identity can be protected completely. We have a settlement agreement drafted that you can sign for your client based on a power of attorney so that again nobody will ever know that he was involved. Your client will be identified only by the case number. Nobody will ever know that he was involved with this. We will communicate with the ISP directly and withdraw the subpoena. We deal with them on such a regular basis we have a process worked out for that."

3. The Threats regarding Motions to Quash

During my initial call with the Plaintiff's attorney, I suggested that (a) I wasn't sure they had met the pleading standards of Twombly and Iqbal if they didn't even know who were their defendants; (b) I was confident I could file a Motion to Quash and put them to the test as to whether they had a basis to survive a Motion to Dismiss as well; and (c) I had factual defenses. Again I recall the response because it was striking. The response was "these guys (I took this to mean the national client) are filing these things all over the country and they *can't have* motions to quash even filed in any cases because it hurts them in other cases. If you file a motion to quash they will not settle with you and I have orders to go full steam and to make

THE HOLZMAN LAW FIRM, LLC

sure that your client is named personally and publically in this case if you file a motion to quash."

After that first episode, I called the "settlement office in Florida" and obtained the settlement figure, I discussed with my client the threats, the costs of going forward with litigation, and the settlement figure. Ultimately the client paid the settlement.

However, after we paid the settlement proceeds and obtained a written release, the plaintiff did not immediately send anything in writing to assure me that the subpoena had been quashed -- no withdrawal or consent to quash, etc. So, I filed a motion to quash on behalf of my client and served the ISP with a copy. Immediately, I received a furious telephone call from the Plaintiff's counsel, again telling me that "these guys do not want *any* motions to quash and they were going to be angry. I reminded him that I had a written release (which said nothing about quashing the subpoena) and my client had already paid the consideration.

4. Abuse of Process

The Plaintiff's scheme of using subpoenas in this fashion is an abuse of process, and if I had found a client brave enough to risk it, I would have filed suit on that basis. The use of the subpoenas was crafted intentionally to create fear of embarrassment, and professional or personal hardship. Each of the subpoenas was intentionally served with papers laced with the salacious titles of the allegedly infringed works. There was and is no reason to emblazon the subpoenas with such titles. The title was not necessary for the ISP to identify the owner of the IP address and it had no business in the subpoena materials sent the ISP. The sole reason was that it served as the mechanism to communicate to the purported defendants the nature of the threat and to create the fear necessary to achieve settlements. The added feature of the "settlement office" in Florida and its ready speech about anonymity, the threats regarding motions to quash, and the carefully crafted settlement figures just large enough to make some easy profit, but not large enough to prompt most defendants to spend money on attorneys' rather than settle, all point to the real nature of this scheme.

Thank you for inviting my comments on this matter. I have thought about these cases many times over the past several years and have always wished there was "something" I could do. I will attend this hearing and will be pleased to appear as *amicus curiae* and to answer any questions the court may have.

As always, I am

Yours truly,
THE HOLZMAN LAW FIRM, LLC

BY: _____\s\_____
Lawrence R. Holzman